IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RAYMOND F. SACK,** | Case No. 1:21-cv-00364-PAB |
| **Plaintiff** | |
| v. | **JUDGE PAMELA A. BARKER** |
| **JOHN A. BARBISH, et al.,** | |
| | **MEMORANDUM OPINION & ORDER** |
| **Defendants** | |

This matter is before the Court upon Defendants' Motion for Partial Judgment on the Pleadings, filed on April 19, 2021. (Doc. No. 7.) On June 2, 2021, Plaintiffs filed an Opposition to Defendants' Motion (Doc. No. 9), to which Defendants replied on June 8, 2021. (Doc. No. 10.) For the reasons set forth herein, Defendants' Motion for Partial Judgment on the Pleadings (Doc. No. 7) is GRANTED.

I. Background

A. Factual Allegations

Plaintiff Raymond F. Sack ("Sack" or "Plaintiff") is an employee of Defendant City of Wickliffe ("City"), serving as the Building Commissioner in the classified civil service in the City of Wickliffe Building Department. (Doc. No. 1 at ¶ 2.) Defendant John A. Barbish ("Barbish") is the Mayor and also serves as the Director of Public Safety of the City of Wickliffe pursuant to the City Charter. (*Id.* at ¶ 3.)

### 1. City Ordinances and Reduction of Position

On December 17, 2018, Wickliffe City Council passed two ordinances, allegedly at Barbish's behest. (*Id.* at ¶ 6.) The first ordinance, Ordinance 2018-66, eliminated the position of full-time Building Commissioner of the City. (*Id.* at ¶ 7 & Ex. A, Page ID# 13.) The second ordinance, Ordinance 2018-67, created the position of part-time Building Commissioner for the City. (*Id.* at ¶ 8 & Ex. B, PageID# 14.) On December 27, 2018, Sack filed an appeal with the Civil Service Commission pursuant to the City Charter, in the event that the Ordinances were applied to and implemented against him. (*Id.* at ¶ 9.) Furthermore, on December 28, 2018, counsel for Sack forwarded a letter to Defendant indicating that "according to law, [the Ordinances] cannot be applied to Mr. Sack to negatively impact his position given that he is a full-time classified civil servant of the City" and "seeking clarification as to whether Barbish intended to utilize the ordinances to transfer, reduce or remove Mr. Sack from his position." (*Id.* at ¶ 10.) On January 1, 2019, "the City, through Barbish's directive, transferred, removed, reduced, or otherwise negatively impacted Mr. Sack by eliminating his full-time Building Commissioner status and reducing his employment to that of part-time Building Commissioner." (*Id.* at ¶ 11.)

On February 4, 2019, the City sent Sack official notice that his position as Building Commissioner had been changed to a part-time position as of the beginning of January 2019. (*Id.* at ¶ 12 & Ex. C, PageID# 15.) Subsequently, the Commission heard Sack's appeal regarding the minimization of his position on March 18, 2019. (*Id.* at ¶ 15.) The Commission reversed the minimization of Sack's role and reinstated him to the full-time position of Building Commissioner. (*Id.* at ¶ 15 & Ex. E, PageID# 17-29.)

### 2. 3-Day Suspension and Appeal

On October 14, 2019, Barbish issued a Notice of Pre-Discipline Conference to Sack. (*Id.* at ¶ 16 & Ex. F, PageID# 30-31.) The Notice set forth in part:

> You [Sack] failed to follow a directive regarding the procedures to be followed regarding the referral of contractors to residents. Instead of supplying the list of approved contractors to residents, you made a referral of a specific contractor which you were advised previously was prohibited.

(*Id.* at PageID# 30.) A Pre-Discipline Conference was held on October 25, 2019. (Doc. No. 1 at ¶ 17.) On October 29, 2019, the hearing officer "issued 'findings' to Barbish affirming Barbish's conclusion that Mr. Sack violated the charges presented in the Notice of October 14, 2019, and concluding that a three (3) day suspension without pay was appropriate." (*Id.* at ¶ 18 & Ex. G, PageID# 32-33.) Barbish then issued a formal notice of Sack's suspension on October 31, 2019. (*Id.* at ¶ 19 & Ex. H, PageID# 34.)

On November 8, 2019, Sack appealed his suspension to the City's Civil Service Commission. (*Id.* at ¶ 20 & Ex. I, PageID# 35.) The Civil Service Commission held a hearing on Sack's appeal on January 3, 2020. On January 24, 2020, the Commission reversed Sack's unpaid suspension. (*Id.* at ¶ 21 & Ex. J, PageID# 37-44.) That same morning, Sack alleges that "Barbish ordered Mr. Sack into his office and began a tirade, berating and intimidating Mr. Sack for an extended period of time, and included statements regarding Mr. Sack's age and Barbish's desire for Mr. Sack to be removed from employment with the City." (*Id.* at ¶ 22.) Following Barbish's alleged tirade, Sack's counsel sent a cease-and-desist letter to Barbish on January 27, 2020. (*Id.* at ¶ 23 & Ex. K, PageID# 45-46.)

Sack alleges that he faced other retaliatory and discriminatory conduct. For example, Sack alleges that Barbish has not allowed Sack "to utilize an additional $2000.00 granted to the Building Department by City Council to cover administrative duties"; that "Barbish has forbidden Mr. Sack

3

from representing the City at City-related functions"; that "Barbish has required . . . only Mr. Sack [ ] to keep a daily log of his work activities and forward the log to Barbish"; and that "Barbish has taken action and made derogatory statements as to Mr. Sack's age, including calling Mr. Sack an 'old [expletive] that is ruining the City.'" (*Id.* at ¶¶ 26-29.)

### B. Procedural History

On February 15, 2021, Sack filed his Complaint. (Doc. No. 1.) In his Complaint, Sack sets out 5 counts: Count 1: Age Discrimination in Employment Act (ADEA); Count 2: Retaliation under the ADEA; Count 3: Tortious Emotional Distress; Count 4: Entity Liability; and Count 5: Hostile Work Environment. (*See id.* at ¶¶ 30-54.) Defendants filed a Motion for Partial Judgment on the Pleadings on April 19, 2021, seeking judgment as to Sack's federal ADEA claims, Counts 1, 2, and 5. (Doc. No. 7.) Plaintiff filed an Opposition to the Motion on June 2, 2021 (Doc. No. 9) to which Defendants replied on Jun 8, 2021. (Doc. No. 10.) Defendants' Motion for Partial Judgment on the Pleadings is ripe for decision.

### II. Standard of Review

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603,

605 (6th Cir. 2011). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly*, 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors

of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

In ruling on a Rule 12(b)(6) or 12(c) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430. *See also Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (same); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). Under Rule 12(d), "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If a motion to dismiss is converted to a motion for summary judgment, the court must give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

### III. Analysis

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Sack alleges that Defendants contravened the ADEA when Defendants reduced Sack's employment from full-time to part-time due to Sack's age, when Defendants retaliated against Sack for filing his appeal, and when Defendants harassed Sack based on his age. (Doc. No. 1 at ¶¶ 30-41; 49-54.)

#### A. Sack's ADEA Claims as Alleged Against Barbish in his Individual Capacity

Defendants assert that "Counts One, Two, and Five against Defendant Barbish must be dismissed with prejudice" because "a plaintiff-employee cannot sue an individual supervisor under

the ADEA." (Doc. No. 7 at PageID# 104-05.) Plaintiff counters that "claims against Mr. Barbish in his individual capacity are proper as a result of the breadth of his supervisory position and control over Plaintiff." (Doc. No. 9 at PageID# 115.)

"As an initial matter, an individual employee or supervisor who does not otherwise qualify as an 'employer' may not be held liable under Title VII, the ADEA or the Rehabilitation Act." *Fleming v. Hogan*, No. 1:16-cv-688, 2016 WL 1558694, at *2 (N.D. Ohio Apr. 18, 2016) (citing *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400 (6th Cir. 1997)). "[N]umerous courts, including [the Sixth Circuit], have held that supervisors, sued in their individual capacities, are not included within the statutory definition of 'employer' under Title VII and its sister civil rights statutes, and accordingly cannot be held personally liable for discrimination." *Hiler*, 177 F.3d at 546. "[T]he legislative history and the case law support the conclusion that Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII." *Wathen*, 115 F.3d at 406. "[T]o the extent that [plaintiff] has attempted to bring claims against the individual defendants for age discrimination [or] retaliation . . . [plaintiff]'s claims would fail as a matter of law as there is no individual liability under Title VII, the ADA, or the ADEA." *Alessio v. United Airlines, Inc.*, No. 5:17-cv-1426, 2018 WL 902334, at *4 (N.D. Ohio Feb. 15, 2018).

The Court concludes that Barbish may not be held individually liable under the ADEA and, thus, Sack's ADEA claims against Barbish should be dismissed. *See Wathen*, 115 F.3d at 404-05 & n. 6. As in the cases of *Wathen* and *Hiler*, where the Sixth Circuit held that an individual employee or supervisor who does not otherwise qualify as an "employer" may not be held personally liable under Title VII and the ADEA, respectively, Barbish is not subject to individual liability here. *See Wathen*, 115 F.3d at 406 & n. 6 ("[T]he statute as a whole, the legislative history and the case law

support the conclusion that Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII."); *see also Hiler*, 177 F.3d at 547 ("[S]upervisors, sued in their individual capacities, are not included within the statutory definition of 'employer' under Title VII and its sister civil rights statutes, and accordingly cannot be held personally liable for discrimination."). This conclusion applies with equal force to individual liability under the ADEA. *See Wathen*, 115 F.3d at 404 & n. 6 ("Because Title VII, the ADEA, and the ADA define "employer" essentially the same way, an analysis based on Title VII, the ADEA, and the ADA case law is appropriate.").

Moreover, to the extent that Sack also brings claims against Barbish in his official capacity as the City's Mayor and Director of Public Safety, such claims are redundant to Sack's claims against the City itself. *See, e.g.*, *Burton v. City of Memphis*, No. 13-2070-JDT, 2013 WL 5924379, at *4 (W.D. Tenn. Oct. 31, 2013) ("Further, to the extent Plaintiff seeks to bring claims against these individuals in their official capacity, such claims are redundant to her claims against the City of Memphis." (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *Schindewolf v. City of Brighton*, 107 F. Supp. 3d 804, 827 (E.D. Mich. 2015) ("'An ADA and RA [Rehabilitation Act of 1973] suit may be brought against a public entity by naming the entity itself or by suing an agent of the entity in his official capacity.' Therefore, claims against defendants in their official capacities are duplicative of the claims against the public entity itself.") (internal citations omitted). Accordingly, the federal claims in Counts 1, 2, and 5 of the Complaint against Barbish in his individual capacity are dismissed.[1]

---

[1] The parties raise arguments in their briefing regarding whether legislative immunity would bar individual liability against Mayor Barbish "for his role in the City's passage of legislation to convert Plaintiff's position from full-time to part-time." (Doc. No. 7 at PageID# 109-10.) *See also* Plaintiff's Opposition: "Mr. Barbish is not entitled to any legislative

### B. Failure to Exhaust Administrative Remedies

Next, Defendants argue that Sack's failure to file a charge with the EEOC "operates as a bar to all his claims" under the ADEA, "whether characterized as age discrimination, retaliation, or harassment." (Doc. No. 7 at PageID# 105.) Sack counters that he should not be required to file with the EEOC and also that federal courts have held that the administrative filing requirements imposed under Title VII and the ADEA are considered "conditions precedent," similar to statutes of limitation, which are subject to equitable modification. (Doc. No. 9 at PageID# 116). Further, Sack argues that he continues to be subject to ongoing violations and that his ADEA claims have been timely asserted. (*See id.* at PageID# 117-19.)

As a prerequisite to bringing claims under the ADEA, a claimant must first exhaust his administrative remedies. *Merhulik v. Weltman, Weinberg & Reis Co., LPA*, No. 1:20-cv-1188, 2020 WL 7156621, at *4 (N.D. Ohio Dec. 7, 2020) (citing *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 401 (6th Cir. 2008)). A claimant exhausts his administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC"). *See, e.g.*, *Shu-Lien Chang v. Sodexho, Inc.*, No. 5:11-cv-935, 2011 WL 3444239, at *3-4 (N.D. Ohio Aug. 7, 2011). According to the Sixth Circuit,

> The purpose of filing a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC so that the Commission may first attempt to obtain voluntary compliance with the law. . . . These investigatory and conciliatory procedures notify potential defendants of the nature of plaintiffs' claims and provide them the opportunity to settle the claims before the EEOC rather than litigate them.

---

immunity, and therefore Plaintiff's claims against Barbish should remain in their entirety." (Doc. No. 9 at PageID# 119.) As the Court has already dismissed the claims against Barbish in his individual capacity on the ground that there is no individual liability under the ADEA, (*see, e.g.*, *Wathen*, 115 F.3d at 404-06 & n.6), the Court finds it unnecessary to address the legislative immunity argument on its merits.

*Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) (citations omitted). Importantly, "[f]ailure to exhaust administrative remedies is an appropriate basis for dismissal." *See, e.g.*, *Hoover v. Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002) (dismissing ADEA claims for failure to exhaust remedies); *Williams v. United Steel Workers of Am.*, No. 1:09-cv-743, 2010 WL 909883, at *4 (S.D. Ohio Mar. 10, 2010) (same); *Jestice v. Butler Tech. and Career Dev. Schs. Bd. of Educ.*, No. 1:11-cv-101, 2012 WL 71021, at *3 (S.D. Ohio Jan. 10, 2012) (same).

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but [is] a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). "The federal courts sparingly bestow equitable tolling." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* at 560-61. In determining "whether the equitable tolling of the EEOC filing period is appropriate in a given case," the Sixth Circuit has "consistently taken into consideration" five factors:

> 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement for filing his claim.

*Amini v. Oberlin Coll.*, 259 F.3d 493, 500 (6th Cir. 2001) (quoting *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys*, 209 F.3d at 561.

The Court concludes that Sack failed to exhaust his administrative remedies by first presenting his age discrimination, retaliation, and harassment claims to the EEOC. Sack's Complaint contains

no representation that he first filed a charge with the EEOC or the Ohio Civil Rights Commission ("OCRC")[2], nor does Sack allege that he obtained a "right to sue" letter from the EEOC regarding these age discrimination claims. Thus, in the Court's view, none of Sack's ADEA claims are properly before this Court. *See Hoover*, 30 F. App'x at 513; *Shu-Lien Chang*, 2011 WL 3444239, at *4.

Moreover, Sack does not appear to contest the fact that he failed to file a charge with either the EEOC or OCRC prior to bringing the instant suit. (Doc. No. 9, PageID# 117.) Rather, he insists that he "should not be required to file with the EEOC" regarding the instant claims because the ADEA's administrative filing requirements are "subject to equitable modification . . . ." (*Id.* at PageID# 116.) He claims that "it would have been futile . . . to file any charge with the EEOC, simply to be forced to wait for a 'right to sue' letter and wait to pursue claims in this Court." (*Id.* at PageID# 116-17.) Sack urges the Court to apply equity to allow him "to proceed herein without the draconian need to file a charge with the EEOC and wait for a 'right to sue' letter." The Court rejects this argument for several reasons.

First, Sack fails to explain why he is entitled to an "equitable modification" in his Opposition, beyond simply restating the Fifth Circuit's case law. (*Id.* at PageID# 116, citing *Clark v. Resistoflex Co.*, 854 F.2d 762, 765 (5th Cir.1988)). But in *Clark*, the plaintiff-employee had actually filed a charge with the EEOC, mere days after a limitations period expired. 854 F.2d at 764. The Fifth Circuit affirmed the part of the district court's judgment holding that the 180-day EEOC filing period should

---

[2] Sack also could have opted to present his charges to the Ohio Civil Rights Commission ("OCRC"). *See Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 518 & n. 3 (Where the plaintiff filed a charge with the OCRC, "[t]he charge was simultaneously filed with the EEOC. In Ohio, charges of discrimination with the OCRC are 'dual filed,' meaning that OCRC forwards a copy of the charge to the EEOC, which then opens its own file for the charge." (citing *Ross v. ITT Cleveland Motion Control*, No. 1:09-cv-2220, 2010 WL 779999, at *3 (N.D. Ohio Mar. 2, 2010)).

not be equitably tolled. *Id.* at 771. Here, Sack never even filed a charge with the EEOC or state agency.

Second, even if Sack attempted to explain why the Court should equitably toll the EEOC filing period in his case, such an argument would fail. As the Sixth Circuit identified in *Amini*, there are five factors to consider in whether to equitably toll the EEOC filing period in a given case. 259 F.3d at 500. As to the first and second *Amini* factors, lack of notice of the filing requirement and lack of constructive knowledge of the filing requirement, Sack was ostensibly represented by counsel from his earliest efforts in lodging a Civil Service Commission appeal. (Doc. No. 1 at ¶¶ 9-10.) His counsel forwarded a letter to Defendants on December 28, 2018, indicating Sack's intention to appeal the Ordinances in the event they negatively affected his position. (*Id.* at ¶ 10.) These two factors do not weigh in favor of equitable tolling. *See Nitch v. E. Gateway Cmty. Coll.*, No. 4:19-cv-2490, 2020 WL 5203491, at *2 (N.D. Ohio Aug. 31, 2020), *aff'd*, 2021 WL 2030081 (6th Cir. May 21, 2021) (observing that "Plaintiff is represented by counsel" (citing *Amini*, 259 F.3d at 500-01 ("because Amini is a lawyer, he should be considered as having both actual and constructive notice of the 300-day filing period."))). As to the third factor, diligence in pursuing his rights, while Sack was diligent in pursuing appeals before the Civil Service Commission (*see* Doc. No. 1 at ¶¶ 9, 20), he neglected to file any charge with the EEOC at all. Regarding the fourth factor, absence of prejudice to the defendant, "although it is unclear how the grant of equitable tolling relief to [Sack] would be prejudicial to [Defendants], the Supreme Court has held that this factor alone" is an insufficient basis for allowing equitable tolling relief to the plaintiff. *Amini*, 259 F.3d at 501 (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)). Lastly, regarding the fifth factor, the plaintiff's reasonableness in remaining ignorant of the particular legal requirement for filing his claim, it was

unreasonable for Sack—represented by counsel from the outset and diligently pursuing appeals before the Civil Service Commission—to remain ignorant of the administrative exhaustion requirement for a potential ADEA claim. *See, e.g.*, *Hobson v. Mattis*, No. 09-cv-2971, 2018 WL 7890771, at *3 (6th Cir. Nov. 8, 2018) ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling.") (citation omitted).

Finally, even if Sack attempted to explain why he is entitled to an "equitable modification" of the ADEA's administrative exhaustion requirement, courts apply equitable tolling sparingly in situations where litigants fail to exhaust their administrative remedies. *See Graham-Humphreys*, 209 F.3d at 560. "[A]bsent compelling equitable considerations" limitations should not be extended by a single day. *Id.* at 561. Equitable tolling applies only when a litigant's failure to meet a deadline "unavoidably arose from circumstances beyond that litigant's control." *Id.* at 560-61 (citing *Baldwin Cty.*, 466 U.S. at 151). Here, Sack points to no circumstances that were beyond his control that prevented his filing a charge with the EEOC. Sack merely argues that it would have been futile to file a charge with the EEOC and wait for a "right to sue" letter. (Doc. No. 9 at PageID# 117.) But regardless of how futile Sack thought this was, it is a statutory prerequisite. *See Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989) (equitable tolling was not warranted where plaintiff did not request a right-to-sue letter and that "[s]uch a decision flouts the statutory requirement . . . and amounts to a position of arrogance regarding the statutory requirement as mere surplusage."). As Sack never filed a charge in the first place and does not identify any compelling circumstances that obstructed his ability to do so, the Court declines to equitably toll the time period for filing an EEOC charge.

Additionally, the Court disagrees that Defendants' alleged "continuing violations" against Sack somehow waive the ADEA's administrative exhaustion requirement. Sack argues that "ongoing punitive measures" (*see* Doc. No. 1 at ¶¶ 26-29) "coupled with ongoing derogatory comments . . . are discrete acts that build over time," and are sufficiently related to form a "pattern of discrimination," such that Sack's ADEA claims are timely asserted. (Doc. No. 9 at PageID# 118-19.) However, Sack again fails to explain why "continuing violations" entitle him to dispense with his obligation to administratively exhaust these claims. (*See* Doc. No. 9, PageID# 118-19.) The Court agrees with Defendants that Sack's "continuing violation argument is premature at best and not yet ripe." (Doc. No. 10 at PageID# 128.) As the Sixth Circuit recently explained in *Davis v. Metro Parks and Recreation Dep't*:

> The statute's filing provision "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). A claim will be "time barred if it is not filed within these limits." *Id.* An alleged unlawful employment practice involves a "discrete retaliatory act or discriminatory act." *Id.* at 110, 122 S.Ct. 2061. **Each discriminatory act constitutes a "single occurrence even when it has a connection to other acts."** *Id.* **at 111, 122 S.Ct. 2061. This can mean that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."** *Id.* at 113, 122 S.Ct. 2061. Each and every discriminatory act "**starts a new clock for filing charges** alleging that act." *Id.* For example, in *Morgan*, the court held that "[w]hile Morgan alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through ... the date he was fired, only incidents that took place within the timely filing period are actionable." *Id.* at 114, 122 S.Ct. 2061.

854 F. App'x 707, 712 (6th Cir. 2021) (emphasis added). Even though Sack alleges that there are ongoing violations that relate to the alleged employment discrimination, Sack *never* filed a charge with the EEOC on *any* of the alleged discriminatory acts. Although it is possible that there are ongoing, newly occurring violations that may relate to prior occurrences, Sack has failed to file any charge with the EEOC or state agency regarding any alleged violation. If, as Sack contends, there is

14

ongoing discriminatory conduct (*see* Doc. No. 9 at PageID# 119), he would be within his rights to file a charge with the EEOC within the limitations period that begins with each alleged discriminatory act. Indeed, *Davis* explicitly contemplates that every discriminatory act "starts a new clock for filing charges"—i.e., for filing a new charge of discrimination with the EEOC. *Davis*, 854 F. App'x at 712. Because Sack has failed to file any charge with the EEOC, the Court will not address speculative ongoing violations.

Plaintiff failed to exhaust his administrative remedies prior to bringing suit. "Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of an . . . ADEA action." *Hoover*, 30 F. App'x at 513. Accordingly, Counts 1, 2, and 5 are dismissed.

### C. Supplemental State Law Claims

In addition to the three federal claims Sack alleges in Counts 1, 2, and 5 of his Complaint, Sack also brings two state law claims: Count 3: Tortious Emotional Distress, and Count 4: Entity Liability. (*See* Doc. No. 1 at ¶¶ 42-48.) Because the Court has granted Defendants' Motion for Partial Judgment on the Pleadings and dismissed the three federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once they have dismissed all claims over which they had original jurisdiction. "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[A] district court has broad discretion to decide whether to exercise jurisdiction over state law claims." *Smith v. Erie Cty. Sheriff's Dep't*,

15

603 F. App'x 414, 424 (6th Cir. 2015). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *accord Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

Thus, the Court declines to exercise supplemental jurisdiction over the state law claims. Counts 3 and 4 are dismissed without prejudice.

### IV. Conclusion

Accordingly, and for all the reasons set forth above, Defendants' Motion for Partial Judgment on the Pleadings (Doc. No. 7) is GRANTED.

**IT IS SO ORDERED.**

Date: September 13, 2021

        *s/Pamela A. Barker*
PAMELA A. BARKER
U.S. DISTRICT JUDGE